# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____  )
                                                  )
GONZALES CALLOWAY,                                )
                                                  )
      Plaintiff,                               )
                                                  )
      v.                                       )
                                                  )     Civil Action No. 04-239 (RBW)
LES BROWNLEE,                                     )
SECRETARY OF THE ARMY                             )
                                                  )
      Defendant.                               )
_____  )

## MEMORANDUM OPINION

The plaintiff, a retired noncommissioned officer ("NCO") of the United States Army

("Army"), brings this action contending that the Army improperly denied his request to remove

two Non-Commissioned Officer Evaluation Reports[1] from his personnel file in violation of the

Administrative Procedure Act, 5 U.S.C. § 701 et seq. Amended Complaint for Declaratory

Relief[2] ("Compl.") at 1. Currently before the Court are the defendant's Motion to Dismiss,

Transfer, or, for Summary Judgment ("Def.'s Mot."), the plaintiff's Cross-Motion for Summary

---

[1] The contested reports are for the periods of August 1993 to January 1994 (NCOER 9308-9401), and February 1994 to November 1994 (NCOER 9402-9411). Compl. ¶ 1.

[2] The plaintiff filed a motion for leave to file an amended complaint after the parties' dispositive motions were fully briefed. However, the plaintiff did not attach the proposed amended complaint as required by LCvR 15.1. Accordingly, that motion is denied for failure to comply with the local rules. However, as the defendant concedes in his opposition to the plaintiff's motion for leave to file an amended complaint, because no responsive pleading has yet been filed in this case, under Federal Rule of Civil Procedure 15(a), the plaintiff did not need to seek leave of court to file an amended complaint. Accordingly, on September 29, 2004, the plaintiff filed an amended complaint. Because the amended complaint did not alter the substance of the plaintiff's allegations, but rather only asserted that the action was seeking only non-monetary relief, see Compl. ¶ 39, the parties filed renewed motions for summary judgment which simply incorporated the arguments advanced in the prior motions. This Court will cite to the previously filed papers, as those papers, and not the renewed motions, contain the parties' substantive arguments.

Judgment ("Pl.'s Cross Mot."), and the parties' oppositions thereto.[3]  For the reasons set forth

below, this court will deny the defendant's motions for summary judgment, to transfer, and to

dismiss, and grants in part the plaintiff's cross-motion for summary judgment.

## I.  Background

**(A)**   **Regulatory Framework**

The evaluation of noncommissioned officers is governed by Army Regulation ("Army

Reg.") 623-205 (April 30, 1992), which establishes the Noncommissioned Officer Evaluation

Reporting System ("NCOERS").  The regulation provides for the "preparation, processing [and]

submi[ssion]" of Noncommissioned Officer Evaluation Reports ("NCOER"), whose purpose is

to, in part, "ensure the selection of the best qualified noncommissioned officers to serve in

positions of increasing responsibilities by providing rating chain view of performance/potential

for use in centralized selection . . . ."  Army Reg. 623-205 § 1-5(a)(2).  The information

contained in these reports is one factor used as the basis for making personnel decision, including

school selections, promotions, and the assignment of military occupational speciality

classifications.  Id.  Each NCO is evaluated by both a rater, who is generally the NCO's

immediate supervisor, id. § 3-5(a)(1), and a senior rater, who is someone who is higher in the

chain-of-command than the rater.  Id. § 3-7(a)(1).  The primary responsibility of the rater is to

evaluate the NCO's duty performance and professional development, id. § 3-6(a), while the

---

[3]  Specifically, before the Court are: the defendant's Memorandum in Support of Defendant's Motion to Dismiss, Transfer, or, Alternatively, for Summary Judgment ("Def.'s Mem."); the Plaintiff's Memorandum of Points and Authorities in Support of Cross-Motion for Summary Judgment, Opposition to Defendant's Motion to Dismiss and Motion to Transfer ("Pl.'s Mem."); the Defendant's Response to Plaintiff's Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment, and Opposition to Plaintiff's Cross Motion for Summary Judgment ("Def.'s Reply"); and the Plaintiff's Reply to Defendant's Opposition to the Cross-Motion for Summary Judgment ("Pl.'s Reply").

senior rater's role is primarily "overwatching the performance evaluation, and mentioning." Id. § 3-8.[4]

Pursuant to this evaluation system, report information is completed on DA Form 2166-7, the NCO Evaluation Report. Id. § 6-1 & pp. 27-28. This evaluation form contains a number of sections in which various attributes of an NCO are evaluated. For example, in Part IV, raters assess whether the NCO satisfies certain values, i.e., dedication, commitment, discipline, honesty, and courage. Id. at 27. Also in Part IV, the rater evaluates the NCO's competence, physical fitness and military bearing, leadership, training, and responsibility and accountability. Id. at 28. In each of these categories, the rater determines whether the NCO merits a rating of "excellence," "success," "needs some improvement," or "needs much improvement." Id. In addition, in Part V, the rater assesses the NCO's overall performance and indicates whether the NCO's overall potential for promotion and/or service in positions of greater responsibility is "among the best,"[5] "fully capable,"[6] or "marginal."[7] Id. at 28. In addition, the senior rater assesses the NCO's overall performance and the NCO's overall performance for promotion and service in positions of greater responsibility, and assigns numerical scores to the evaluations. Id. A rating of "1", "2", or "3" is considered a "successful" or "superior" rating, with "1" being the

---

[4] In addition, the regulation provides for a "Reviewer," who provides comments "only when in disagreement with the rater and/or senior rater." Id. § 3-10. The reviewer's role is to ensure that the reports are completed by the correct people and that they are "clear, consistent, and just in accordance to known facts." Id. § 3-10(a)-(b).

[5] "NCOs who have demonstrated a very good, solid performance and a strong recommendation for promotion and/or services in positions of greater responsibility" should be rated as "among the best." Id. § 6-15

[6] "NCOs who have demonstrated a good performance and, should sufficient allocations be available, a promotion recommendation" should be rated as "fully capable." Id. § 6-15.

[7] "NCOs who have demonstrated poor performance and should not be promoted at this time" should be rated as "marginal." Id. § 6-15.

highest possible numerical score.  A numerical rating of 4 is considered "fair" and a score of "5" is considered poor and is the lowest possible rating.  Id.  The senior rater also provides comments to support his or her numerical scores.  Id.

Such evaluations must occur at least annually, however, if certain qualifying events occur, the evaluations must be completed more often.  Id. § 2-7(a).  For example, "[a] report will be submitted whenever the designated rater is changed as long as the minimum rater qualifications are met."  Id. § 2-8(a) ("change-of-rater evaluation").  Rater changes occur if either the rater or the NCO is reassigned, released from active duty, or if the rater dies, is relieved, reduced, AWOL, declared missing, or becomes incapacitated.  Id. § 2-8(a)(1)-(5).  In addition, an NCOER must be conducted if an NCO is being relieved of his or her duty for cause.

> Relief-for-cause is defined as the removal of a NCO from a rateable assignment based on a decision by a member of the NCO's chain of command or supervisory chain that the NCO's personal or professional characteristics, conduct, behavior, or performance of duty warrant removal in the best interest of the U.S. Army.

Id. § 2-10 ("relief-for-cause evaluation").  "[R]elief of an individual for cause is one of the most serious steps taken.  It is preceded with formal counseling by the commander or supervisor unless such action is not deemed appropriate under the circumstances."  Army Reg.  600-20 § 2-15 (March 30, 1988).

An NCO has a number of procedural channels available to challenge an adverse NCOER. For example, an NCO can request a Commander Inquiry to determine whether an NCOER was "illegal, unjust, or otherwise in violation of [Army Regulations.]" Army Reg. 623-205 § 2-15. Moreover, an NCO may appeal an NCOER to the Enlisted Special Review Board ("ESRB"), which hears appeals when claims are made alleging substantive inaccuracy in an evaluation or

injustice, such as bias, prejudice, inaccurate or unjust ratings.  Id. §§ 4-2(i), 4-5(b).  If the appeal

is denied by the ESRB, an NCO may either seek reconsideration by the ESRB, put forth new

evidence in support of a new appeal before the ESRB, or appeal the ESRB's decision to the

Army Board for Correction of Military Record ("ABCMR" or "BCMR").  Id. § 4-5(f).  On

appeal, the NCO bears the burden of proving a substantive inaccuracy or injustice.  Id. § 4-7(a).

In addition, the regulation states that NCOERs are presumed to be "administrative[ly] correct",

"[h]ave been prepared by the proper rating official," and "[r]epresent the considered opinion and

objective judgment of rating officials at the time o[f] preparation."  Id. §§ 4-2(a)(1)-(3).  Any

appeal "must be supported [b]y substantiating evidence."  Id. § 4-2(f).  And the NCO must

establish by clear and convincing evidence that the above listed presumptions should not be

applied.

**(B)    Factual Background**

In 1974, the plaintiff enlisted in the Army as an active duty member.  Compl. ¶ 1.

Initially, the plaintiff trained as an Automated Data Processing specialist.  Id.  However, in

October 1983, the plaintiff, who was then a Staff Sergeant, became an Army recruiting specialist.

Id. ¶ 2.  From 1983 through most of 1985, the plaintiff was a Field Recruiter at various recruiting

stations in the "Seattle Washington Recruiting Battalion."  Id.  During this time, the plaintiff

received an award for Top New Recruiter in 1984, and was "commended" as Top Recruiter in

the battalion in 1985.  Id.  In 1985, the plaintiff was promoted to Sergeant First Class.  Id. ¶ 3.  In

September 1985 and until January 1987, the plaintiff was the commander of a Field Recruiting

Station in the "Seattle Washington Recruiting Battalion."  Id. ¶ 4.  Following this assignment, in

January 1987, the plaintiff became a Recruiting Trainer at the Army Recruiting Training Brigade

in Fort Baker, California.  Id. ¶ 5.  The plaintiff served in this position until February 1988, at

which time he again was a station commander of a recruiting station in Seattle, Washington.  Id.

¶ 6.

      Following his 1988 assignment to the Seattle position, the plaintiff was transferred to the

Norfolk Virginia Recruiting Company, United States Army Recruiting Battalion, Richmond,

Virginia and assigned as the Company's First Sergeant.  Id. ¶ 7.  The plaintiff's first NCOER

(NCOER 9303-9307) as senior sergeant at this company was issued as a change-of-rater

evaluation because the plaintiff's supervisor departed.  Id. ¶ 12.  He received "excellence" marks

in all five categories of the NCOER, and the senior rater awarded the plaintiff the highest

numerical score possible, "1", for overall performance and promotion potential.  Id. ¶ 12.

      Thereafter, Captain Latham became the plaintiff's supervisor and thus his rater under the

NCOERS.  Id. ¶ 15.  According to the plaintiff, once Captain Latham assumed this position, he

began to shift credit for the Norfolk Virginia Battalion's successes from the plaintiff to himself.

Id. ¶ 15.  The plaintiff alleges that after Latham's effort to relieve him of his duties was

unsuccessful, a "back-room deal was made" in his absence whereby the plaintiff would receive

credit for the Company's success by the issuance of a Meritorious Service Medal, while at the

same time he would be relieved of his duties and receive an evaluation which he deemed would

be a "career-ender NCOER."  Id. ¶¶ 16-17.  In this evaluation, which covered the period of

August 1993 through January 1994, the plaintiff contends that his prior "excellence" marks in

Part VI of the NCOER were "deflated."  Id. ¶ 16.  To support this accusation, the plaintiff points

to the fact that in the prior NCOER, he received five "excellence" ratings, while in the NCOER

for this period he received only two "excellence" ratings and three "success" ratings.  Id ;

compare Administrative Record ("A.R.") at 166-167 (NCOER 9303-9307) with A.R. at 169-170

(NCOER 9308-9401).  Moreover, the plaintiff notes that his overall evaluation was downgraded

from the prior NCOER, which had rated him "among the best," to "fully capable" in the NCOER

for that rating period.  Id.  In addition, the plaintiff notes that the senior rater in this NCOER

rated the plaintiff's overall performance and overall potential for promotion as a "2" and

commented that the plaintiff should be promoted with his contemporaries, while the senior rater

in the prior NCOER rated the plaintiff's overall performance and overall potential for promotion

as a "1" and asserted that the plaintiff should be promoted to Sergeant Major.  Id.  Following the

issuance of the 1994 NCOER, the plaintiff was reassigned.  Compl. ¶ 19.  According to the

plaintiff, this NCOER, despite carrying the label of a change-of-rater NCOER, was in reality a

relief-for-cause NCOER.  Id. ¶ 17.  Thus, because the evaluation was considered a change-of-

rater evaluation, rather than a relief-for-cause evaluation, the plaintiff posits that he was not

provided an opportunity to challenge the evaluation or receive counseling and therefore Army

Regulation 623-205 § 2-10 was violated.  Id. ¶¶ 20-25.

The January 1994 reassignment resulted in the plaintiff being assigned as the First

Sergeant of the Cherry Hill Recruiting Company, United States Army Recruiting Battalion,

Philadelphia, Pennsylvania.  Id. ¶ 26.  According to the plaintiff, after eleven months at this new

Battalion, the "standings" of the Battalion improved significantly.  Id.  The plaintiff contends that

these improvements made the Captain in charge of the Battalion look bad and thus to "steal the

credit," the plaintiff opines that the Captain recommend that the plaintiff be relieved of his

duties.  Id. ¶¶ 27-28.  In November 1994, the plaintiff was allegedly relieved and received his

NCOER.  Again, the plaintiff alleges that this evaluation was, despite being labeled a change-of-

rater evaluation, a relief-for-cause evaluation, and thus again Army Regulations were violated, id. ¶¶ 29-30, thereby again denying him the opportunity to challenge the evaluation.

In 1996, the plaintiff for the first time became eligible for promotion to the rank of Sergeant Major, but was not selected for the position.  Id. ¶ 32.  In January 1997, the plaintiff filed an appeal with the ESRB seeking to have the two allegedly adverse NCOERS's removed from his personnel filed or corrected to reflect his true performance.  Id. ¶ 33.  Following a review of the plaintiff's appeal, the ESRB amended the later of the two NCOER to correct the ending date of the evaluation period from December 1994 to November 1994.  Id.  The ESRB denied the plaintiff's remaining claims for relief.  Id. ¶ 35.  On October 7, 1997, the plaintiff appealed the ESRB's decision to the ABCMR, which denied his appeal in March 1998.  Id. ¶ 36. In July 1998, the plaintiff was mandatorily retired.  Id. ¶ 37.

The plaintiff now challenges the ABCMR's decision denying his request to have the contested NCOERs removed from his personnel file or otherwise corrected to reflect his true work performance.  The defendant seeks to have this complaint dismissed for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) or alternatively transferred to the Court of Federal Claims, pursuant to 28 U.S.C. § 1631.  In addition, should this Court deny the dismissal or transfer motions, both parties seek summary judgment pursuant to Rule 56(c).  Each of the parties arguments will be addressed below.

## II.   Standards of Review

Under Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, "[t]he plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence."  Pitney Bowes, Inc. v. United

8

States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998).  In reviewing such a motion, this Court

must accept as true all the factual allegations contained in the complaint.  Leatherman v. Tarrant

County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).  Additionally, in

deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to

the allegations in the complaint, but may also consider material outside of the pleadings in its

effort to determine whether the court has jurisdiction in the case.  See EEOC v. St. Francis

Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Academy of

Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.

1987); Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C.

2001).

   This Court will grant a motion for summary judgment under Rule 56(c) if "the pleadings,

depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a motion for summary

judgment, this Court must view the evidence in the light most favorable to the non-moving party.

Bayer v. United States Dep't of Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992).  However, the

non-moving party cannot rely on "mere allegations or denials . . . , but . . .  must set forth specific

facts showing that there [are] genuine issue[s] for trial."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986) (citation omitted).  Under Rule 56, "if a party fails to establish the existence

of an element essential to that party's case and on which that party will bear the burden of proof

at trial" summary judgment is warranted.  Hazward v. Runyon, 14 F. Supp. 2d 120, 122 (D.D.C.

1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  The party moving for

summary judgment bears the burden of establishing the absence of evidence that supports the

non-moving party's case.  Id.  In considering a motion for summary judgment, "the court must

draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.

133, 150 (2000).

### III.   Legal Analysis

**(A)    The Defendant's Motion to Dismiss or, in the Alternative, Motion to Transfer**

The defendant first contends that the plaintiff is seeking non-tort monetary damages in

excess of $10,000, and thus this case should be dismissed for lack of jurisdiction or otherwise

transferred to the United States Court of Federal Claims.  Def.'s Mem. at 3.  The plaintiff

contends, however, that this Court has jurisdiction under the Administrative Procedure Act

("APA"), 5 U.S.C. § 701, et seq.  Pl.'s Mem. at 2.

The Court must begin its analysis by determining whether this action is one properly

brought under the Tucker Act, because if it is, an assessment of the Court's jurisdiction pursuant

to the APA is unnecessary as subject matter jurisdiction under the APA only lies when "there is

no other adequate remedy in a court."  5 U.S.C. § 704; see Bennett v. Spear, 520 U.S. 154, 161-

62 (1997).  Under the Tucker Act, 28 U.S.C. § 1491, the United States Court of Federal Claims

has jurisdiction

> to render judgment upon any claim against the United States founded either upon the
> Constitution, or any Act of Congress or any regulation of an executive department, or
> upon any express or implied contract with the United States, or for liquidated or
> unliquidated damages in cases not sounding in tort

28 U.S.C. § 1491(a)(1).  District courts have concurrent jurisdiction with the Court of Federal

Claims in most Tucker Act cases in which the plaintiffs are seeking less than $10,000 in

monetary relief.  28 U.S.C. § 1346(a)(2) ("Little Tucker Act").  The District of Columbia Circuit

has noted that "'[j]urisdiction under the Tucker Act cannot be avoided by . . . disguising a money

claim' as a claim requesting a form of equitable relief."  Kidwell v. Dep't of the Army, 56 F.3d

279, 284 (D.C. Cir. 1995) (quoting Van Drasek v. Lehman, 762 F.2d 1065, 1071 n.11 (D.C. Cir.

1985)).  Thus, the Circuit Court has instructed that to enforce this rule, courts must "look to the

complaint's substance, not merely its form."  Id.  To assist district courts in determining whether

they have jurisdiction over an action, or whether jurisdiction lies in the Court of Federal Claims,

the District of Columbia Circuit has created a bright-line test.  Under this test, a case is "based on

the Tucker Act's waiver of sovereign immunity only if the plaintiff seeks money or the district

court grants it."  Id. at 285.  However, where "monetary benefits would flow to the plaintiff not

'from the district court's exercise of jurisdiction, but from the structure of statutory and

regulatory requirements governing compensation . . . ' the monetary benefit will not defeat

jurisdiction in this Court."  Bubliz v. Brownlee, 309 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting

Kidwell, 56 F.3d at 285-86).  One member of this court has concluded that this simply means

that "a district court will not lose jurisdiction over a claim for injunctive relief where that

injunctive relief triggers the payment of money, so long as the injunctive relief is of sufficient

importance relative to the monetary award to support jurisdiction."  Id. (emphasis in original).  In

addition, the Court "must also consider whether the equitable relief requested has value

independent of its financial aspect."  Bliss v. England, 208 F. Supp. 2d 2, 7 (D.D.C. 2002) (citing

Kidwell, 56 F.3d at 286).

          This test has been applied in a straight-forward manner.  In Kidwell, the plaintiff sought

judicial review of a decision by the ABCMR, which refused to alter the plaintiff's personnel file

to reflect a medical discharge as opposed to a general discharge.  Kidwell, 56 F.3d at 282.  The government moved to dismiss the suit alleging that the action was one for monetary damages and thus, under the Tucker Act, the district court did not have jurisdiction.  Id.  The District of Columbia Circuit concluded that the district court had jurisdiction over the plaintiff's claims even though the plaintiff "hinted" at an interest in monetary relief in excess of $10,000 because the plain terms of the complaint did not mention monetary relief.  Kidwell, 56 F.3d at 286.  Moreover, the Court noted that the equitable relief requested, a change in discharge status from a general discharge to a medical discharge, was not "negligible in comparison" to the monetary claims because such a change "would lift some of the shame associated with failing to receive an honorable discharge."  Id. at 285; compare Vietnam Veterans of Am. v. Sec'y of the Navy, 843 F.2d 528, 535 (D.C. Cir. 1988) (Circuit Court had jurisdiction over an action by former servicemen seeking to upgrade their less than honorable drug-related discharges because the "plaintiffs neither sought nor were awarded monetary damages."); Wolfe v. Marsh, 846 F.2d 782, 783-84 (D.C. Cir. 1988) (district court had jurisdiction over action because the plaintiff only sought "'mandatory injunctive relief' declaring his dishonorable discharge unlawful and directing reinstatement and an upgrade, and 'other further, alternative, or equitable relief' including costs and fees."); with Bliss v. England, 208 F. Supp. 2d, at 7 (dismissing on lack of jurisdiction grounds the plaintiff's action which sought to challenge a Board of Corrections of Naval Records decision determining the plaintiff's retirement rank because the plaintiff explicitly requested monetary relief in his complaint).

Here, the defendant posits that the plaintiff's complaint seeks reconsideration of a promotion backdated to 1996 and a higher retirement pension.  Def.'s Mem. at 4-5.  Thus, the

defendant argues that the plaintiff seeks to obtain back pay and increased pension benefits exceeding $10,000.  Id. at 5.  Moreover, the defendant contends that there is no "independent valuable interest" in the correction of any of the NCOERs, and it is clear that this action is for monetary relief.  Id.  In response, the plaintiff posits that he is not seeking backpay or any monetary relief, but rather simply seeking the equitable relief of having his personnel file corrected.  Pl.'s Mem. at 3.  Moreover, the plaintiff counters that any backpay that might be awarded based on this Court's decision regarding the plaintiff's equitable relief would not come as a direct result of the litigation before this Court.  Rather, the plaintiff represents that if he receives the requested equitable relief from this Court, he would then have to apply through the Secretary of the Army for another decision to convene a special selection board to reconsider his non-selection for a promotion.  Id.  In addition, the plaintiff opines that there is "'considerable value' attached to [his] lawsuit to eliminate the stigma of ending his 25-year Army career under the disgrace of two adverse NCOERs that allegedly relieve him for incompetence."  Id. at 3.

After carefully reviewing the complaint and the arguments advanced by the parties, it is clear that the defendant's position is without merit.  In this case, the plaintiff seeks three things: (1) a declaration that the Army's denial of his claims violated the APA; (2) an order vacating in their entirety the NCOERs for the periods of 9308-9401 and 9402-9411 and a remand of his case to the Army for appropriate relief; and (3) reasonable attorney's fees and costs.  Compl. at 11. Although the plaintiff discusses his non-selection for a promotion in the complaint, it is clear that his complaint does not ask this court to review his non-selection, rather, the plaintiff seeks only to challenge the denial of his request to remove the two contested NCOERs from his personnel file.  Id. ¶ 38 ("Plaintiff-Calloway now seeks judicial review of the BCMR decision limited to the

denial of his request to remove" the two contested NCOERs).  Moreover, the plaintiff's

complaint does not on its face seek monetary damages and in fact explicitly states that "Plaintiff-

Calloway is not seeking monetary relief."  Id. ¶ 39.  It is well-settled in this jurisdiction, that a

party can avoid Tucker Act jurisdiction by waiving any claim to monetary recovery over $10,000.

See Stone v. Untied States, 683 F.2d 449, 451 (D.C. Cir. 1982).  Here, to the extent that the

defendant's argument that the plaintiff is seeking monetary relief in excess of $10,000 has merit,

any such monetary relief has been waived.  See Steffan v. Cheney, 733 F. Supp. 115, 120 n.2

(D.D.C. 1989) (indicating that the plaintiff's characterization of the action as one seeking no

monetary relief satisfied waiver requirement).  Thus, the Tucker Act does not strip this Court of

jurisdiction.

Moreover, the defendant does not dispute the plaintiff's position that any monetary

damages would not flow from the case before this Court, but rather from later proceedings before

various Army boards of review.  See Def.'s Reply at 3.  The argument that some subsequent

monetary benefit by a plaintiff would divest this Court of jurisdiction has been rejected by the

District of Columbia Circuit.  In Vietnam Veterans of Am., the Circuit Court was presented with

a challenge to its jurisdiction.  Vietnam Veterans of Am., 843 F.2d at 533.  There, former

servicemen brought an action seeking to upgrade their less than honorable drug-related

discharges.  Id. at 530.   The district court entered judgment in favor of the servicemen, and the

government appealed.  On appeal, the government argued that jurisdiction over the appeal was in

the Federal Circuit because the plaintiff's claim was premised on the Little Tucker Act.  Id. at

534.  Specifically, the government contended that a "direct, automatic, and unavoidable

consequence of [the upgrades would] be payment for the leave accrued at the time of [the former

servicemen's] discharges," and therefore the relief being sought was for monetary relief under the

Little Tucker Act.  Id. at 534 (internal quotations omitted).  The Circuit Court rejected this

argument concluding that "[a]s plaintiffs neither sought nor were awarded monetary damages, we

have jurisdiction over this appeal."  Id. at 535.  In so finding, the Circuit Court made two

important points relevant to the case here.  First, the Court noted that "[i]t is . . . clear that a claim

is not for money merely because its success may lead to pecuniary costs for the government or

benefits for the plaintiff."  Id. at 534.  And second, the Court instructed that a court cannot go

"outside the record sought to be reviewed" to determine its jurisdiction.  Id.

Here, nothing in the plaintiff's complaint can be construed as an attempt to obtain

monetary relief, and accordingly, the Tucker Act does not prevent this Court from retaining

jurisdiction over the plaintiff's claims.  See Steffan, 733 F. Supp. at 121 ("[T]he Tucker Act does

not apply to this action because plaintiff is not seeking money damages.").  Moreover, any relief

the plaintiff may be entitled to is certainly not automatic and would not flow directly from the

outcome of this litigation.  Pl.'s Mem. at 3 (discussing process the plaintiff must pursue to be

awarded a promotion and thus be entitled to back pay and greater retirement benefits).   Thus, the

Court's jurisdiction in this case is even clearer than was the situation presented to the Circuit

Court in Vietnam Veterans of Am., because in that case monetary relief would flow directly from

the district court's actions.  Vietnam Veterans of Am., 843 F.2d at 534; see also Steffan, 733 F.

Supp. at 120-21 ("An examination of the case law reveals that the government's contention that

an implicit claim for back pay in excess of $10,000 confers exclusive jurisdiction on the Claims

Court is unwarranted.") (citing <u>Vietnam Veterans of Am.</u>, 843 F.2d at 532-35).[8]

     Based on the facts of the case as presented to the Court, it is clear that jurisdiction over the plaintiff's claims are not predicated on the Tucker Act. Rather, the APA provides the basis for this Court having subject matter jurisdiction. Accordingly, the defendant's motion to dismiss or in the alternative to transfer is denied.

**(B)      The Parties' Motions for Summary Judgment**

     Turning now to the parties' cross-motions for summary judgment, it is clear that the plaintiff's motion should be granted in part, and the defendant's motion must be denied. To succeed, the plaintiff must establish that the rejection of his request to remove the two contested NCOERs from his personnel file was arbitrary and capricious and an abuse of discretion. 5 U.S.C. § 706(2). Under this standard, an agency action is arbitrary and capricious if the agency failed to follow procedure as required by law, or has entirely failed to consider an important aspect of the case presented to them. 5 U.S.C. § 706(2)(D); <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins., Co.</u>, 463 U.S. 29, 43 (1983). The District of Columbia Circuit has instructed that decisions of a BCMR or its other branch equivalents are entitled to an even higher level of deference. <u>Kreis v. Air Force</u>, 866 F.2d 1508, 1514-15 (D.C. Cir. 1989). "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command

_____

[8] Moreover, even if this Court could conclude that the equitable relief sought would automatically trigger the payment of money, it is clear that the equitable relief being sought is of sufficient importance relative to the monetary award to support jurisdiction. Here, the plaintiff seeks removal of two contested NCOERs, which he claims are adverse to his extensive and otherwise outstanding military service. While this relief does not rise to the level of an attempt to remove a dishonorable or a general discharge from one's military record, there is clearly a stigma associated with leaving the Armed Forces with two allegedly negative NCOERs. Cf. <u>Wolfe</u>, 846 F.2d at 783-84 (seeking to remove dishonorable discharge from his record); <u>Vietnam Veterans of Am.</u>, 843 F.2d at 532 (seeking to remove drug-related discharge from record).

and take the judiciary far afield of its area of competence." Cone v. Caldera, 223 F.3d 789, 793

(D.C. Cir. 2000) (citing Orloff v. Willoughby, 345 U.S. 83, 94 (1953)).  Thus, under this

deferential standard, a court surely cannot "substitute its judgment for that of the agency," Motor

Vehicle Mfrs. Ass'n, 463 U.S. at 43, or "supply a reasoned basis for the agency's decisions that

the agency itself has not offered." Puerto Rico Higher Educ. Assistance Corp. v. Riley, 10 F.3d

847, 850 (D.C. Cir. 1993) (citing Securities & Exchange Comm'n v. Chenery Corp., 332 U.S.

194, 196 (1947)).  Rather, the court must ensure that the agency "examine[d] the relevant data

and articulate[d] a satisfactory explanation for its action." Id.

The Secretary of the Army, acting through the ABCMR, "may correct any military record

of the Secretary's department when the Secretary considers it necessary to correct an error or

remove an injustice." 10 U.S.C. § 1552(a)(1).  The plaintiff bears the burden of establishing by

"cogent and clearly convincing evidence" that the decision was the result of a material legal error

or injustice. Muse v. United States, 21 Cl. Ct. 592, 602 (Fed. Cl. 1990) (citations omitted); see

also Koskik v. Peters, 31 F. Supp. 2d 151, 157 (D.D.C. 1998); McDougall v. Widnall, 20 F.

Supp. 2d 78, 82 (D.D.C. 1998).  Satisfying this burden is difficult, because the plaintiff "must

overcome the strong, but rebuttable, presumption that administrators of the military, like other

public officers, discharge their duties correctly, lawfully, and in good faith." Muse, 21 Cl. Ct. at

602 (internal quotation marks omitted).  "This presumption 'includes those officers who are

charged with rating the performance of other officers.'" Id.

The parties frame the issue before this Court in two very different manners.  The

defendant alleges that the ABCMR reviewed the factual basis for the contested NCOERs and

carefully considered the claims that the plaintiff was asserting and thus there was nothing

arbitrary and capricious about the ABCMRs actions and judgment should be entered in their favor.  Def.'s Mem. at 10.  The plaintiff contends, however, that he is entitled to summary judgment because the rating officials for the contested NCOERs denied the plaintiff due process when the NCOERs were designated as change-of-rater reports while they were, as the plaintiff describes them, "de facto reliefs-for-cause" reports.  Pl.'s Mem. at 4.  Accordingly, because the reports were change-of-rater reports, as opposed to relief-for-cause reports, the plaintiff did not receive formal counseling, was not provided a grace period to react to the report, and was not explained the reasons for his removal from his current duty position.  Id. at 5.  Thus, opines the plaintiff, these reports were prepared in violation of the applicable Army Regulations and contain material legal errors.  And, because the ABCMR did not address these arguments, the plaintiff posits that its decision should be reversed and the contested NCOERs should be set aside.  Id. at 14.

Based upon the parties' summary judgment papers, it is apparent that the plaintiff is not challenging the ABCMR's decision as it relates to assessing the reasonableness of the NCOERs as change-of-rater reports, but rather the ABCMRs failure to determine whether, based upon the evidence presented, these NCOERs were in fact relief-for-cause reports.  And if so, whether they were prepared and issued in violation of the applicable Army Regulations.  In fact, the plaintiff's entire cross-motion for summary judgment analyzes his claims as if the NCOERs were change-of-rater reports.  Pl.'s Mem. at 4-14; Def.'s Reply at 11 ("plaintiff's entire complaint is premised on his claim that the Army "'de facto' relived him for cause but did not adhere to the procedural requirements of Army Reg. 623-205 ¶ 2-10, applicable to relief for cause NCOERs").

The defendant contends that this issue was not raised at the administrative level and is

therefore not properly before the Court.  Def.'s Reply at 9 (citing ABCMR decision).  It is easy to

see why the defendant would make this argument, as neither the ABCMR nor the ESRB

addressed the issue, but rather focused entirely on whether the plaintiff's raters and senior raters

gave "him due credit for his performance as first sergeant of two recruiting companies."  A.R. at

2-7 (ABCMR decision), 21-32 (ESRB decision).  While it is not entirely clear from the

administrative record that this issue was raised at the administrative level, it does appear that it

was.  Specifically, documents submitted by the plaintiff to the Army during the process of his

challenge of the NCOERs indicate that the issue was raised.  See, e.g., Pl.'s Mot.; Ex. A at 14-15

(plaintiff's Memorandum appealing NCOER 9402-9412) ("the relief requested should have

resulted in a relief for cause NCOER").; Ex A at 19 ("1SG Calloway is being relieved from his

duties of First Sergeant by this Battalion.  Relief action will be forwarded to the Brigade

Commander once complete.").  Admittedly, it was not explicitly clear that the plaintiff was

challenging his NCOERs in the manner they are now being challenged, there is some evidence in

the record to suggest that he did.  Moreover, because the plaintiff was preceding pro se at the

agency level, this Court and the agency must take pains to protect the rights of pro se parties

against the consequences of technical errors.  See  Haines v. Kerner, 404 U.S. 519, 520 (1972)

(recognizing that pro se litigants are held to less stringent standards than those who are counseled

by attorneys).

    The District of Columbia Circuit has concluded that the failure of a BCMR to respond to

arguments raised by a plaintiff, which do not appear frivolous on their face and could affect the

Board's ultimate disposition, is arbitrary.  See Frizelle v. Slater, 111 F.3d 172, 177(D.C. Cir.

1997); see also Mudd v. Caldera, 26 F. Supp. 2d 113, 123 (D.D.C. 1998).  Accordingly, because

it appears that this argument may have been raised at the agency level and the argument is not

frivolous on its face, the ABCMRs failure to address it was arbitrary and this case must be

remanded to the Secretary of the Army to review this argument in the first instance.  If the agency

decides to disregard this argument, then

> it must expressly indicate that it has done so.  Otherwise neither [the plaintiff] nor this
> court would be able to discern whether the [ABMCR] considered and was unpersuaded
> by those factors or whether the [ABMCR] simply excluded them from its decision
> making process.  Moreover, if the [ABCMR] excludes those factors from consideration it
> must explain its rationale for doing so.[9]

Puerto Rico Higher Educ., 10 F.3d at 853.  "In other words, although the [ABCMR] need not

consider each of [the plaintiff's] arguments on its merits, if it decides not to address these

arguments, it must explain why."  Frizelle v. Pena, Civ. A. No. 93-0905, 1993 WL 548825, at *4

(D.D.C. Dec. 30, 1993).

## IV.   Conclusion

For the foregoing reasons, this Court denies both the defendant's motion to transfer and

the defendant's motion to dismiss.  Moreover, because this Court concludes that the ABCMR

acted in an arbitrary manner by not addressing all of the plaintiffs's arguments, this Court grants

the plaintiff's motion for summary judgment to the extent that it seeks remand to the Secretary of

the Army and denies the defendant's motion for summary judgment.

---

[9] As this Court has previously indicated, it is not explicitly clear that the plaintiff raised this argument at the agency level.  Accordingly, it is entirely possible that on remand the agency, after reviewing all the papers before it, might conclude that this is not an argument that was properly raised.  However, if the agency were to reach such a conclusion, it must explicitly indicate the reasons for its decision so that this Court may properly review that decision if it is appealed.

**SO ORDERED** this 30th day of March, 2005.[10]


                              REGGIE B. WALTON
                          United States District Judge

---

[10] An Order consistent with this Court's ruling accompanies this Memorandum Opinion.